May it please the Court, my name is Steve Shamburick and I represent the petitioners in this matter, the Auction Block Company and its related entity Harbor Leasing LLC. First I'd like to say I'm pleased you all saw Alaska with some sunny weather. I'd also like to thank you for granting oral argument and in addition I'd like to thank you for giving us a few extra minutes to present our arguments. I would like to state at the outset that I will not be able to point that we aren't waiving any of the arguments simply because we won't be able to get to them. Really this issue involves two fundamental concerns. One, the rules and second, jurisdiction. What I'd like to do really is focus on jurisdiction. Without jurisdiction this matter won't go forward. I cited that the two cases I think you are most familiar with from the Supreme Court that discussed the distinction between personal jurisdiction and subject matter jurisdiction. That distinction is also recognized by the Federal Maritime Commission at least up until this decision in the Auction Block Company. There are two decisions, recent decisions, by previous commissioners and commissions. One of them is Canaveral Port Authority and the other is Bystate Motors. Now I cited those to the Commission when we were on appeal. Neither of them are even site to Canaveral Port Authority but neither of those are discussed and you may want to inquire of the government of the applicability of those two statutes. In the Federal Maritime Commission they do recognize this distinction between personal jurisdiction and subject matter jurisdiction. If you'll take a look at those two cases the FMC specifically says we want to make sure that the parties recognize this distinction and they set it forth almost sui sponte. The client has to be a person and as you see the definition of person is very broad. I don't think it excludes anyone. That is met. The action has to be brought against a marine terminal operator. Now that is a matter of personal jurisdiction. I just have to stop you right there because that strikes me as completely wrong. Why would it be a matter of personal jurisdiction? It's whether the subject matter of the dispute is even within the realm of the FMC can decide. A number of decisions going all the way back to California versus United States when Justice Frankfurter was taking a look at the earlier definition of marine terminal operator stated that it really has to do with whether or not that operator should be before the Commission to determine whether or not the claims of prejudice or discrimination or if this, I'll have to put it this way, nobody's disputing that if this particular claim that you're raising involved the, what is it, the Deep Dock, I can't remember the names of the Pioneer Dock and the other dock, right, where common carriers certainly are serviced, nobody's contending that the City of Homer couldn't be brought in there. It's just that this dispute arises out of a different dock, one that's not, doesn't, can't give rise to a dispute that's within the subject matter jurisdiction of the Commission. That's not the test. It really isn't. If you take a look at the line of cases, it has been consistent for the last 99 years, since 1916. When you take a look at the port, you take a look at the port activities. There's a number of cases that have consistently said you don't take a look at sub areas and that was never even suggested as an issue. I still submit and I hope when you review this record you'll see that it's a matter of personal jurisdiction and under the... Personal jurisdiction over whom? Over... The FMC exercising personal jurisdiction over... The Port of Homer and the City of Homer. What possible objection could they have to the exercise of personal jurisdiction over them? I don't know, Your Honor. In addition, they never raised an objection. But I can understand why there would be a challenge to the overall jurisdiction of the Federal Maritime Commission, which might sound in subject matter jurisdiction, but I can't see there's any argument here about personal jurisdiction. Okay, I believe that the Port and the City of Homer are properly before this Court and the test for subject matter jurisdiction focuses exclusively on whether or not the causes of action arise under the Shipping Act. That is the focus of the activities and what we have here are tariffs that are prepared and within the exclusive control of the City and the Port of Homer and those define the jurisdiction of the tariffs and then of the Commission. You do have these different courts, but keep in mind, even though the auction block focuses most of its activities at the fish dock, it also has testimony in there that it sells fish to the cruise ships that come up here and visit. They're common carriers, they're at the deepwater dock, they've made a decision prudently to support the local industry. Then what you've got is, even by their definition, which we believe was waived because it goes to personal jurisdiction, what you've got is the vessel which no longer has the shore base plant and instead is at the deepwater dock. Now the deepwater dock does service common carriers and our argument is to take a look at the tariffs and you'll see that any entity, any person, that uses the terminal services or facilities of the respondents is deemed to agree to the terms of the tariffs. And so you've got common carriage at the deepwater dock, you've got the competitor, Icicle, at the deepwater dock. We've argued that they should look broadly and see that these tariffs apply to a number of entities that are operating at different docks. In addition, Icicle makes use of the fish dock, so there's activities at both docks. The tariffs that are within the control of the city should be controlling. They're the ones that can change the definitions and they do treat Icicle differently, even though Icicle, by operation of the tariffs, has been deemed to consent to the tariffs. Let me try to just put the issue maybe in slightly different terms from what you've been arguing, because I see this as a relatively straightforward issue of whether the Commission's reading of the statute is entitled to Chevron deference or not. You're, you know, your reading of the definition of marine terminal operator doesn't strike me as crazy. I mean, one could just say, look, if you basically provide the kinds of services described in the statutory definition anywhere, for all intents and purposes, you are a marine terminal operator and it doesn't matter which particular dock the dispute arises out of. But obviously the Commission has rejected that reading. It's adopted a facility-specific interpretation of this statute, and it seems to me the only question before us is whether under Chevron that reading of the statute is reasonable or not. And so far you haven't really addressed that question at all, so that's why I want to put it to you. Thank you. Chevron really is the intent of Congress, and this, the Commission and the Court, are supposed to give effect to the intent of Congress. As you'll note, Congress did have a chance to revisit the Shipping Act in 1999, and when Congress addresses legislation they're assumed to be aware of the status of the law and the interpretations. And I would submit that consistently there is not a decision that says that the FMC will look at a port-by-port basis. There's a focused discussion by the Commission, R.O. White, and in that case he actually asked the Bureau of Enforcement, which is within the Federal Maritime Commission, to provide testimony. It's not a party. It came in and they stated that there has never been a port-by-port analysis. Well, wait, that First Circuit decision certainly adopted that interpretation of the statute, right? First Circuit or D.C. Circuit? The Puerto Rico Ports Authority. Oh, that was the First Circuit, yes. Yeah, I thought that case did adopt a port-specific reading of the statute. No, Your Honor, it didn't. What it was, you have to take a look at Puerto Rico Ports Authority very carefully, because as one of the judges notes in here, it's a very specific case. Puerto Rico Ports Authority was excluded by statute from owning any terminal services or terminal facilities. I don't even know why they were named. They were named, and what the Court noted is that they don't have any control over terminal services. Yeah, that may be true, but that might not have helped them if they've been in the D.C. Circuit, if they've been providing fire services. They might still have been prohibited from operating port facilities, but if they were providing ordinary police and fire protection, that might have been sufficient under the D.C. Circuit's decision. I think the point being, then, if it had been brought in the D.C. Circuit, the D.C. Circuit might have found jurisdiction. The two big cases involving jurisdiction are Petchem, and that was authored by Judge Buckley, who I think generally was fairly constrained in his views of the jurisdiction of every entity, and then you've got what was called Plaquemines II. And see, what the courts really look at is whether or not you're dealing with terminal services or whether you're dealing with navigation services. And what we've pointed out here for the subject matter jurisdiction, this involves the heart of the core of FMC jurisdiction. Let me take you back to your Chevron argument. So I just want to get some clarification of where you are on Chevron. Chevron has two steps, and the first one is whether the statute is so clear that there's no room for discussion, and if we think that the agency has taken a different view, we can simply overrule them. The second is if the statute is not clear, whether the agency's interpretation of the statute is a reasonable one. Which step? I think, Your Honor, the first step is met, that if you take a look at... So there's no reason for us to defer to the agency at all here because the statute is so clear. What in the statute is so clear that the answer is compelled here by the statute? This statute has been reviewed by many courts. Tell me what provision of the statute you're reading. The statute is actually a definitional provision. It's not in the substantive part of the statute. It's the provision that involves marine terminal operators. Okay, and that would be... Just tell me which provision of the statute. Tell me what statute we're in. It's 40... I think it's a 46-40-102-14? Yes. Yes, and in that case, the decades of cases have, from both the administrative law judges, the Commission, the circuit courts, have said that once there's some service to common carrier, you want the FMC to be able to And in this case, I think that really the intent of Congress is clear in this case, and all of the other courts have seen it. If you could ask the government to cite one case where they've done a subarea by subarea analysis, that was suggested for the first time in an affidavit months after discovery closed, and it wasn't even a legal argument. It didn't suggest it's a late argument regarding personal jurisdiction. Now, the second element of Chevron is, does the Commission decision frustrate the policy that Congress sought to implement? We believe it does. Cities, by their very nature, have a monopoly in an area and over a people, and in this case, the city owns all of the docks and facilities. If there's any way to land on shore, it is controlled, owned, and regulated exclusively by the city. I mean, there's some rock, there's some sand and beach and whatnot, but those aren't areas where they can land. So in this case, Congress has given the laws. If somebody tried to bring an antitrust action under their federal law or state law in federal or state court, they can cite to the Shipping Act and say that we are given this exemption from antitrust law. Well, they're clearly a monopoly. There's clearly what might be called antitrust activity, and what's happened in our scheme of government is those activities are directed to the Federal Maritime Commission. And you really have to take a look at the tariffs, because this is a tariff dispute, and those tariffs are controlling. They're not discussed in the Commission decision, they're not discussed other than generally by the government. But that is where the city can set forth what it controls, what it owns, and the rates. And this is really a simple case where they never challenged this personal jurisdiction issue, and it clearly is within the subject matter jurisdiction of the Federal Maritime Commission, because the Commission has to regulate monopoly. The city is the only Why would Congress want the Commission to be concerned with regulating the dispute with respect to terminal facilities that don't involve in any way common carriers, as that term is defined under the statute? Well, they do involve common carriage. I think the parties have all stipulated that there are common carriers calling at all the other parts. Right, but not the one that... Not the fish dock. Right. We're not even sure if they are. We weren't allowed to undertake any discovery of that issue. You'll note there was... If it is a personal jurisdiction issue, which I'm convinced that it is... But it's not, and I'm not going to be convinced on that point. So try to frame... Think of it in terms of subject matter jurisdiction. That would help me. Take a look at the tariffs and see how the city defines its jurisdiction and its authority, and it's able to determine who is able to use the various facilities. There's no suggestion in there that they look at sub areas or But I thought it was undisputed that no common carriers, at least as that term is defined under the statute, call at the fish dock, because they really couldn't. Right? They might be able to, but again, this issue wasn't even addressed until... But the Commission also said that you had failed to satisfy your burden, so isn't that your responsibility to show that there are common carriers calling at the fish dock? There... At that point, the issue hadn't been put into controversy. It was raised for the first time in 2013. Our discovery ran from August 14th to October 8th, and there were other issues that we were taking... But it should be fairly straightforward to walk down to the fish dock, sit down there for a couple of hours and see whether you have a cruise ship or a deep water ship that comes in and docks at the fish dock. I thought the whole point here, and I thought it was undisputed, was that this is behind a jetty, it's in a very shallow harbor, and you don't have the large ocean-going vessels that are common carriers able to get in at the fish dock. Well... I mean, all you would have to do in order to satisfy your burden, it seems to me, is put in an affidavit from somebody. From... Somebody from... From auction block says, hey, we've got... We've got... We've got cruise ships docking at the fish dock. There aren't cruise ships, but Mr. Hogan did provide an affidavit where he said he's been working on those docks for decades, and he said that he's noted, like, common carriers such as FOSS showing up, and that was not... At the fish dock? At the fish dock. And that you can have smaller vessels showing up at the smaller fish dock, and most of his testimony and the testimony of Ms. Yeoman was just disregarded, and so he said he's seen them, and it's in his affidavit, and the affidavit is reprinted in the discussion. So there was at least one common carrier. The reason it wasn't a focus is that I took a look at the FMC and the Supreme Court and the Circuit Court decisions, and it didn't seem relevant. Your Honor, if I could, I've only got four minutes. I'd like to reserve the rest of my time. Certainly, you may reserve it. May it please the Court, Joel Graham on behalf of the respondents. The Federal Maritime Commission regulates international ocean common carrier transportation by administering the Shipping Act of 1984. The Shipping Act of 1984 provides limited antitrust immunity to agreements between common carriers so long as they submit to Commission regulation. The Commission can also regulate marine terminal operators to make that regulation of common carriers effective. Marine terminal operators are persons who provide terminal facilities in connection with common carriers. This case does not involve common carriers or agreements subject to antitrust immunity or national ocean shipping. Petitioner asked the Commission to regulate the City of Homer's fish dock operations, but Petitioner did not prove a connection between a fish dock and common carriers. Instead, Petitioner relied on the fact that Homer also operates the Deepwater Dock and Pioneer Dock that do occasionally serve common carriers. Do you have any comment on the statement that an affidavit was submitted saying that common carriers came to the fish dock? Was that in that? What's your thoughts on the affidavits that different vessels called at various ports? It was not clear that those common carriers called at the fish dock. I mean, there's lots of talk of ship being sent by truck to Anchorage or to Seattle, but Petitioner told the Commission at oral argument that common carriers did not call it the fish dock. That's what he represented at oral argument before the Commission. And there may have been talking affidavits that Petitioner acts as a shipper and that it sends things other places, but not from the fish dock. The Commission addressed that. Yes. The Commission declined the invitation to police the local Alaskan fishing industry. The court denied the petition for review. The Commission's decision here was consistent with precedent and Congress's intent. In contrast, Petitioner's approach, which is jurisdictional bootstrapping, has no limiting principle and its When the Commission determined whether the Hummer was a Marine Terminal operator at the fish dock, it looks so, excuse me, for the purpose of this case, looks solely at the fish dock, because in Petitioner's words, that was the specific facility at issue. That's what he said in his pre-hearing brief to the Commission. That's what he said in his reply brief and briefing before the court. The Commission rejected the notion that just because a person's a Marine Terminal operator with respect to one terminal, it's a Marine Terminal operator with respect to all, for all purposes, even as to activities not in connection with common carriers. Let me ask you, just looking at the definition of Marine Terminal operator, the plain language of the statute certainly doesn't have this facility-specific qualification to it, right? I mean, it just says you're a Marine Terminal operator if you provide terminal facilities in connection with a common carrier, and it seems to me it's undisputed that the City of Hummer does, right, at these other two ports. Nobody's disputing that, and if this dispute arose out of something connected to one of those two ports, I guess you would say the Commission would have jurisdiction, right? Answer the first part. Yes, the definition does not say anything about facility by facility versus port by port. That's sort of a misnomer, because the Commission is not saying it always has to engage in a facility-by-facility analysis. It's look at what facilities and operations are at issue, and that's what you apply the Marine Terminal operator definition to. The statute doesn't address this issue of bootstrapping that Petitioner brings up. It doesn't say whether to be in... the definition only applies when engaging in providing terminal services in connection with a common carrier, and the in-connection language doesn't say in connection with a common carrier at the facilities at issue, or in connection with the common carrier everywhere. The statute is not clear of that issue at all, which means we're in step two, and the agency's decision only needs to be reasonable. It doesn't need to be the best interpretation, just a reasonable one. Okay, and why is it reasonable? Well, it's consistent with precedent, first of all. The Ninth Circuit affirmed a similar Commission decision in the Trans-Pacific case. There, the term at issue was common carrier, which is defined as a person who holds himself out to... excuse me, a carrier that holds himself out to the general public to provide... to provide transportation from a port in the United States and a port in a foreign country. There, Trans-Pacific argued, like Petitioner here, that if there's... a carrier has one U.S. foreign route, it's a common carrier for all purposes, even as to the foreign foreign routes. The Commission rejected that interpretation there, and the Ninth Circuit affirmed, finding that as... due to common sense and rational regulation, there to be some limit to the Commission's authority. That applies here as well, and the Court took a similar view in... the First Circuit took a similar view in the Puerto Rico Ports Authority case. I don't want to belabor that, but the whole issue of control over facilities really has to do with the first part of the Marine Terminal Operator analysis. It doesn't have to do with the common... in connection with the common carrier analysis, or the issue here at all was whether you can bootstrap your way from one ports into other ports. The Puerto Rico Ports Authority case did  ... the Port Authority was not a Marine Terminal Operator. It looked solely at the Port of Ponce. It didn't matter that the Port also provided terminal facilities at San Juan and another city. So there's two cases that support that. The Commission's interpretation is also consistent with the purpose of the Shipping Act. While the language... The Puerto Rico Ports Authority case, I think, offers you some support, but there's a difference there, because the three ports that were at issue in the Puerto Rico case are three different cities located in three different, very different parts of Puerto Rico. We've got three docks that are adjacent to each other. We're talking about one port, the Port of Homer, with three separate docks. It's a little bit different. This is a much more micro look at the facility-by-facility or port-by-port authority that the FMC is claiming. Yeah, it is a closer case, but only geographically. There's no limiting principle to Petitioner's view that you can pick and choose between the different ports. And here, it's appropriate to look at the Fish Dock, because all the allegations of the unreasonable activities were specific to Fish Dock. The complaint mentioned Fish Dock. Petitioner complained that ISIC was getting a better deal with respect to rates at Fish Dock, with a leasing of ICE facilities on page 53 of the tariff, is what it says in the complaint. That is part of the tariff concerned with the Fish Dock. So in this case, it's appropriate to look solely at the Fish Dock. We're not saying in every case you should look necessarily at facility-by-facility. And in the cases such as Pet-Chem and Plaquemines 1 and Plaquemines 2, the court didn't look to port-wide because the conduct at issue was port-wide conduct. It was a harbor service fee charged to all vessels entering the port in the Plaquemines case. It was commercial towing services that was stripped of the entire port in Port Navarro. Importantly, in those cases, the Commission did not look around to see if the ports authority in those cases were operating at other ports. So here, because of the complaint, what's at issue is Fish Dock, so it was appropriate for the Commission to look at Fish Dock. You were starting to say that the Commission's sort of facility-specific interpretation of the statute is consistent with the broader purposes of the Shipping Act, and maybe you can The purpose of regulating marine terminal operators in the first place was to be able to more effectively regulate those incidental facilities connected to the main carriers. Nothing the Commission here did will prevent it from regulating such operators of incidental facilities. What it does is prevents the Commission from asserting itself over cases or facilities with no connection to common carriers just because something else goes on elsewhere in the port. If the Commission were to assert its jurisdiction over the Fish Dock here because of the operations at the Deepwater Dock, it would also be obligated to regulate all sorts of conduct with no connection to common carriers. For instance, under 46 U.S.C. 41106, one of the statutory prohibitions, it says that a marine terminal operator may not unreasonably impose an unreasonable prejudice or disadvantage with respect to any person. There's nothing in that for shipping or common carriers. There's nothing in the history or structure of the Act that indicates that Congress intended the Commission, for instance, to regulate and adjudicate an employment discrimination claim brought by an employee of a marine terminal operator. The Commission in this case found a limit to its jurisdiction where Congress placed it, which is in the definition of marine terminal operator. Well, but I mean, am I wrong in thinking that the petitioner here views there being, I mean, in their view, there is some linkage between what's going on at the, I don't know if it's the Deepwater Dock or the other one, and what's going on at the Fish Dock because I, is it Icicle? Is that the other entity that's involved? Yes, Your Honor. So, I mean, I could imagine a scenario in which, let's say, there is a linkage between the treatment that the City of Homer is giving Icicle, let's say, with respect to Deepwater Dock and what's going on at the Fish Dock, and it seems to me, why wouldn't the petitioner be able to say, hey, this is perfectly within the purpose of the statute? I can't, I'm not able to think of the hypotheticals, but I bet you're better able to. Well, if there were shown some sort of link between what's going on at the Deepwater Dock that could be considered an actual connection to common carriers, the Commission might have, be able to regulate it in that context. But here, all we have are, they said that they sold fish to cruises that call it Deepwater Dock. But that doesn't mean the, the Homer is in the business of providing terminal facilities with connection to common carriers because petitioner sold fish to a cruise vessel. The type of connection we're talking about, the prototypical example is a vessel calling on, calling on a facility. We don't have that here, and in some other cases talk about what it doesn't mean, but in the example you gave, if there were a connection, the Commission may be able to, depending on the circumstances, be able to review the conduct under the Shipping Act. That's not what happened here. Petitioner focuses mainly on the tariff, but the tariff does not decide the scope of the Commission's jurisdiction. Counsel, does the fact that the Commission has declined to exercise jurisdiction here have any impact on whether or not Auction Block could bring an antitrust suit? So I understand there's some antitrust immunity under the, under the Shipping Act, but if the FMC has decided that there is no, that they have no jurisdiction under the Shipping Act, does that affect the antitrust immunity that the city might, might be able to assert? No, it would still have that immunity. I mean, if the Commission took jurisdiction, then you'd have an issue of whether their agreements they had might fall within the limited antitrust immunity granted by the Shipping Act. Does the, does Auction Block have any other, any other remedy, a common law, state statute, or anything to claim that they're being treated in a discriminatory fashion by the city? I mean, they have the full recourse to state law, federal law, the political process. They can do all of that, but the, it's not something the Commission is involved with. These operations, when they're specific, just the fish stock, there's no evidence of connection to a common carrier. When you say they have, they have full recourse to, to state law, you mean whatever remedies they might be able to can, you don't have anything in particular in mind? No, I do not. And just touching briefly on the personal jurisdiction versus subject matter jurisdiction, the issue there is that the Commission refers to whether an entity is subject to the Act, whether it's a marine terminal operator, whether it's a common carrier, whether it's an ocean transportation intermediary, refer to that as some personal jurisdiction. And sometimes it refers to the issue of whether the ACTA issue has a connection to handling property under 41102C as subject matter jurisdiction. But in other cases, the Commission analogizes the MTO status issue to subject matter jurisdiction, or akin to subject matter jurisdiction, in which case it can't be waived. So we're not dealing here with true personal jurisdiction. You know, no one is arguing that Homer did not get a complaint. That would be personal jurisdiction that could be waived. We're not dealing with that here. And as to the issue that the petitioner did not get a chance to take discovery, Homer was clear from the outset in every answer that it filed that it denied that it was a marine terminal operator or that the court had jurisdiction over it. It raised that in opposition to petitioner's motion for summary judgment. It denied that in its discovery responses, both in customer admissions and interlocutors, which was during the discovery period. It was in September when they denied that in their discovery responses, and discovery did not close until October. So if petitioner wanted to challenge the evidence submitted by some of Homer's witnesses, he could have taken depositions, but they did not. It was their burden to prove the connection, and they didn't. To paraphrase the Puerto Rico Port Story case, there's no indication that Congress intended to give the Commission a roving license to correct any inequity tangentially related to ocean transportation. The Commission reasonably declined to give itself such a license here, and the petitioner should be denied. If there are no further questions, I would cede the remainder of my time to intervener. Thank you. Thank you, Mr. Graham. Ms. Wells? Good morning. If it pleases the Court, I'm Holly Wells. I am the attorney for the intervener, City of Homer. Given my limited time this morning, I'd actually like to start by asking if there's any particular questions that you have for the City. Okay, so seeing none, I'm going to try to address some of the issues raised by both Auction Block and the government today. One of the things that keeps coming up is this personal jurisdiction, subject matter jurisdiction distinction. I think that this has been put to bed fairly well, but I just want to be very clear that that distinction is without a difference before the United States federal courts. That it is, in fact, grounded in agency jurisdiction, the scope of the Act, the purpose and intent of the Act, and if you go to the United States Court of Appeals First Circuit case with the Puerto Rico Port Authority, or you go to the Bridgeport Port Authority case, or any other that I could find, case in which the federal courts are making a decision, they are very careful to stay away from the subject matter, personal jurisdiction distinction, and focus instead on sort of a first part, second part, third part analysis. And I think that that's a very important distinction, because what it does is it grounds the court on review in the purpose and intent of the Act. And when we go to the purpose and intent of the Act, I think what we have is a nonsensical outcome if you apply a facility or a facility-wide analysis in this case. And I think that, and really in most cases, because when you look at the municipal, the municipality, it's a municipal corporation, which means it governs a large spectrum of behavior and conduct. If you don't apply a facility by facility analysis, the Federal Maritime Commission ends up having a hand, if it so chooses, in leaseholds that are 20 miles, if they're within the municipal corporation boundaries, and owned by the municipality within this community. I know I hesitate to even make the argument because it sounds almost histrionic, but it is a reality of the application. Because handling, storing, delivering property simply does not give you any restriction that is tied to the water. So the restriction has to be placed in the first section of the statute and of the definition of marine terminal operator. It has to live there and be housed there for the purpose of the Act to be instituted. And I think there are specific examples of how those leaseholds would be affected and sort of the egregious potential outcome in the briefing. But I think another point to be aware of is why this hasn't come up already. Why this hasn't just, this distinction you would think would have played out, but the reason why I think this is arising now is Alaska has a lot of very active ports, obviously in the exercise, they do not generally create port authorities. So because they don't create port authorities, the municipal corporations operate even in our biggest ports like Anchorage. Anchorage has, I believe they have an enterprise department. But what that means is what happens at the port is being performed and is being operated, managed, carried out by this government that also governs the people in all other areas. And so that's really important. That distinction is important because in Puerto Rico, port authority, you did in fact have a port authority. And even there, the U.S. Court of Appeals immediately and sort of almost implicitly applied this facility analysis when it made sense. The facility by facility analysis was its go-to. Council, let me ask you the same question I asked Commissioned Council. Does Auction Block have any remedy anyplace else? If they think that, anything under Alaska law? Well, yes, there is a statute and I don't have the number in front of me. There is a statute that requires, and I do not believe there is an exemption for a municipality that requires non-discriminatory conduct. So that would apply to us. There's even a statute that applies... And it would apply to commercial transactions involving fish, as opposed to racial disparities in housing or employment? The statute that I'm referring to is actually designed to apply to the conduct surrounding the commercial fishing industry. So it is actually... Now, whether or not that there isn't some other exemption or, you know, how that applies and whether or not the limitations is in play, I'm not really prepared to discuss that today, but I certainly could provide a supplemental brief on that. But in addition to that, we have the federal Constitution and the requirements there because we are, in fact, a government entity. So that once again... What provisions in the federal Constitution might come into play here? Well, I think there's equal protection claims that, you know, may be something that he might assert. Now, whether or not Auction Block would be successful in those claims, of course we would argue that we have behaved in nothing but a, you know, a legally compliant way. But I think that those claims... There's nothing to stop him from bringing those claims based upon activities and conduct at our ports or our facilities. Additionally, you have this idea that the antitrust immunity would somehow protect the city. I really like that idea and I'm very hesitant to concede that it wouldn't, but there are many acts that fall within the purview of these antitrust laws. And I am not familiar at this stage, because it has been unnecessary given the laws of the Federal Maritime Commission, of how those antitrust laws affect the city. But I certainly know that we make every effort to comply with them. We also have a state constitution that is extremely... generally applied in a very conservative way. We have cases, municipal cases, in the last two years that apply equal protection concepts to taxation and otherwise, and find that it's stricter than the federal... its federal counterpart. And so I'm not sure... again, while I haven't seen the arguments, I certainly haven't tried to suss them out. There... I've seen no basis for saying they're not there. Does that adequately address? I think... I think it does. And then one other thing I really want to point out is, I was somewhat alarmed hearing that the... there is an affidavit in which there has been a... the assertion that Comicario serviced the fish stock. There have been several affidavits, but I... I honestly believed that this issue had been conceded and addressed. The design and nature of the fish stock, and the harbor really, and the bottleneck way in which it is laid out, makes the... it makes it impossible as a... it's a strong word, but it makes it very difficult. And it certainly has not been done for this... this harbor to be entered by a deep draft ocean-going vessel, which all Comic... which a Comicario would have to be. So we have... we very actively engaged in discovery. At one point, AuctionBuck was claiming that it was a Comicario. We then went through thousands and thousands of bills of lading in order to determine that there was not one that showed this connection. So before the court puts any weight on this concept that this evidence has been submitted, I would request that we just have an opportunity to provide a response to that, because it is a little... Okay. Thank you. Mr. Shamburek, you have some time remaining. Yes. Your Honor, I'd like to point out that both the initial decision and the Commission decision expressly note that there were only three defenses that were raised. The failure to state a claim, the statute of limitations, and the subject matter jurisdiction. Just to point out that there isn't anything in the record to state expressly that they raised an affirmative defense. The fourth amended... An affirmative defense of what? Lack of personal jurisdiction over this... I don't know why we're still talking about personal jurisdiction. That does nothing but confuse me. Okay. The... in this case, you'd also talked about alternative remedies. We... the Oxnard Black has very little money, and they were looking at what is really the most plausible recourse. And in the American judicial system, going to the Federal Maritime Commission to have them take a look at tariffs that were submitted by the city really is the only recourse. It's real easy to say go out and file another lawsuit here, but the the sovereign immunity defenses of the city are very strong. We're not going to bring that lawsuit. They're going to be able to come in and claim, we have antitrust immunity from Congress. There's a supremacy clause. They'll move to dismiss, and under state law, they will get partial attorney's fees. Counsel, I want to come back to your claim that that common carriers are able to use the fish stock. I'm looking at finding a fact number 53 on page 11 of the ALJ's decision. No common carriers are permitted or able to use the fish stock. And the FMC relies on... It's a little more general in the Commission's decision, but it looks like it's relied on that. You seem to have claimed in your opening that you had evidence that contradicted that. There is a statement by Mr. Hogan, who does business there, that he's seen a variety of vessels use it. Did you raise this point in your brief? I don't think we raised it extensively. Well, if you haven't raised it extensively, did you raise it? I don't think so. Okay, then you've waived it. You can effectively conceded this because this was a finding of fact on which the ALJ relied and on which the Commission relied. It may be conceded. Okay. I guess the concern that I'd like to leave with you is that the discovery occurred so quickly, the issue didn't seem to be critical, and the test that we were taking a look at by the Federal Maritime Commission as we were trying to assemble the brief, because the briefing schedule is so quick, it didn't seem to suggest that that was an issue, that you take a look at the entire report. And really, the discovery was tied to the case law at that time. And I would just submit that, especially if you take a look at 46 CFR 525, in that provision there's a statement that a marine terminal operator is not obligated to file tariffs, but if it does file tariffs, those shall create a contract between, in this case, the City of Homer and the Commission to be interpreted, because it's their special expertise that's necessary to determine whether or not the conduct fits within the provisions of the ship. But it has to be dealing with a marine terminal operator or an interstate carrier, and it decided that it wasn't. It's still dealing with a marine terminal operator that is engaged with the common carriage, at least at all of the other ports, and the activities cross ports, because ICICL is using the fish dock, the auction block, sales to the common carriers, the large cruise ships, both to their galleys and then also to some of the individual passengers. So what you've got, what we're really trying to do, is look at how ICICL is being treated. ICICL is at the deepwater dock with their barge in the deepwater dock does service common carriers. So when you take a look at those cases of prudential lines and then river parishes and others, once you show that there is some common carriage, I submit that the case law has established that then the matter is within the subject matter jurisdiction of the Federal Maritime Commission. With that, Your Honor, I just believe that there is no other recourse. I took a look at the possibility of bringing some type of equal protection clause, and yet the equal protection issues have been addressed, the broad equal protection issues have been addressed by Congress, and they have passed this legislation in 1916, then they revisited in 1984, and in 1999. And it's really focused on monopolies, and the city has a monopoly. And really, if you take a look at one of the other findings of the Administrative Law Judge, there's finding that when they offered the RFP, no one other than the auction block submitted a response. I think there's a reason. And in this case, the auction block probably won't make it. And if they go, it's going to have a significant impact on the city, which they won't acknowledge. The numbers I used in my brief weren't quite correct. I talked about the auction block has to pay the tariffs, they pay one. The ICICL does pay something, let's say it's half. One plus a half is one and a half. What we're arguing is that everyone should be treated equally, and that the auction block should pay one, that ICICL should pay one, and then the market decides which one of those entities can compete to provide the fish. We don't have time to go into the fishing industry, but if you take a look at most of the commercial... You're way over your time. You may want to sum up. Your Honor, if I could, I believe that the tariffs really define the jurisdiction of the Federal Maritime Commission. Those are the representations by the city and port. If you take a look at all of the other decisions that we took a look at, they're all consistent. This decision by the Commission is the one inconsistent decision, and they make it on the basis of a number of policy arguments, including regulation and whatnot. Those are really the type of issues that should be addressed to Congress, and Congress can decide if it wants to narrow the focus of the Federal Maritime Commission and the Shipping Act. So we would encourage you to take a look at the many evidentiary issues we raised and developed, and then take a look at this line of case law, and you'll see it's a consistent theme, starting back in 1943 with Justice Frankfurter. I think you want to sum up. Okay. Well, thank you, Your Honors, and we do appreciate your time. Thank counsel for the argument. With that, we have completed the oral argument calendar for the week. The Court is adjourned.
judges: Canby, Bybee, Watford